IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00393-REB-MEH

STAN CHAMBERS,

       Plaintiff,

v.

JACKIE COOPER, in her official capacities,
JOSEPH D. HOY, Eagle County Sheriff, in his official capacity,
HEATH MOSNESS, Eagle County Deputy Sheriff, in his individual and official capacities,
TAD DEGEN, Eagle County Deputy Sheriff, in his individual and official capacities,
ERIC MANDEVILLE, in his individual and official capacities, and
KIMBERLY JAMES, in her individual and official capacities,

       Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

       Before the Court is Defendant Cooper's Motion to Dismiss the Amended Complaint [filed July 8, 2013; docket #32]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket # 33]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140,

## BACKGROUND

Plaintiff Stan Chambers initiated this lawsuit on February 13, 2013. The Amended Complaint contains four claims against Defendant Cooper for violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, and one claim for outrageous conduct. The claims arise from Plaintiff's arrest for violating terms and conditions of a restraining order that was later declared invalid by Eagle County District Court.

### I.    Facts

The following are factual allegations made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On January 21, 2005, Defendant Kimberly James (formally Chambers), Plaintiff's wife at the time, obtained a Temporary Protection Order against Plaintiff. Amended Complaint, ¶ 16, docket #9. The temporary order was made permanent on February 3, 2005 ("the Protection Order"). *Id*. at ¶ 18. The Protection Order did not include the parties' children as protected persons; it was a "no contact" order between Plaintiff and Defendant James only. *Id*. at ¶¶ 17-18.

On April 7, 2005, Plaintiff and Defendant James divorced. *Id*. at ¶ 19. The Protection Order was dismissed and simultaneously incorporated verbatim into the Final Dissolution Decree ("the Final Order"). *Id*. Defendant James was awarded sole custody of the couple's two children. *Id*.

For undisclosed reasons, Plaintiff was sentenced to six years in the Department of Corrections ("DOC") on August 10, 2007. *Id*. at ¶ 20. He was released on parole on March 24, 2011. *Id*. Despite living what Plaintiff describes as "a non-functional life" in the years before he was incarcerated, Plaintiff chose to change while in prison, "as evidenced by his life of sobriety,

---

155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

spirituality and integrity[,] his position as a highly valued employee[,] and having the support and confidence of his family, employer, and Parole Officers." *Id*. at ¶ 21.

While Plaintiff was incarcerated, he was authorized by his DOC case manager to contact his children by mail. *Id*. at ¶ 22. He wrote letters to his children the entire time he was incarcerated, though the children only wrote back to him during the first year. *Id*. at ¶ 23. When Plaintiff was released in 2011, his case manager again informed him that he was authorized to send gifts and letters to his children. *Id*. at ¶ 25. However, when he mailed gifts, cards and money to his children at their home address, Defendant James filed a report with the Eagle County Police Department. *Id*. at ¶ 26. The report claimed that Plaintiff "has been stalking her and violating a protection order that protects her and her children," and that she "is upset over the mail to their home and telephone calls [from Plaintiff] to [his daughter's] school." *Id*. at ¶¶ 27-28.

Officer Arnold, the police officer investigating Defendant James' report, determined that the children were not protected parties in the Final Order. *Id*. at ¶ 29. Nevertheless, Officer Arnold contacted Defendant Tad Degen, the School Resource Officer at the children's school, and "told [him] about this case." *Id*. at ¶ 31. Officer Arnold also contacted the school principal and told her about the Final Order. *Id*. at ¶ 32. The principal "wanted to post a photograph of [Plaintiff] in the office so that if he is seen, they call the police immediately." Defendant James was an employee at the school. *Id*. at ¶ 13.

On February 14, 2012, Plaintiff sent a dozen roses to his daughter at school with a card that said, "Happy Valentine's sweetheart[.] I miss you[.] Love Dad." *Id*. at ¶ 34. The school's secretary did not deliver the flowers because "there was a restraining order in place." *Id*. at ¶ 36. Defendant Eric Mandeville, the assistant principal, delivered the flowers to Defendant Degen, and contacted Defendant James. *Id*. Defendant James contacted Plaintiff's parole officer no fewer than

three times, asking that Plaintiff be arrested. *Id*. at ¶ 37. The parole officer told Defendant James to stop calling him. *Id*.

Defendant James also contacted Defendant Heath Mosness at the police department and reported that Plaintiff was harassing their daughter and violating the restraining order. *Id*. at ¶ 38. Defendant Mosness researched the CCIC database and found the April 7, 2005 order attached to the dissolution case, which stated "distance of 50 yards, excluded from 126 Ringneck, Eagle, Work Gypsum Elementary School, Hairwest 23 Snow Owl, Avon. Not [sic] harrass stalk, threaten or molest plaintiff or otherwise violate this order." *Id*. at ¶ 40. Defendant James was the only plaintiff in the dissolution proceeding, and the addresses were places where Defendant James worked and lived in 2005. *Id*.

Defendant Mosness told Defendant James that the children were not included in the Final Order. *Id*. at ¶ 41. Defendant James responded that "she had spoken with the courts to try to get the language changed and it hasn't happened." *Id*. at ¶ 42. Defendant Mosness said that he would call the courts to try to clarify the language in the Final Order. *Id*. at ¶ 44. He then directed Defendant Jackie Cooper, who was Clerk of Court for the Eagle Combined Courts, to update the language of the Final Order in the computer system. *Id*. at ¶ 51. Defendant Mosness prepared an Affidavit for Arrest of Plaintiff on February 17, 2012. *Id*. at ¶ 53. He also contacted Plaintiff's parole officer and requested a parole violation be issued. *Id*. at ¶ 55. The parole officer refused, determining that the entry of a "no contact" order between Plaintiff and his children was added to the computer system after February 14, 2012. *Id*. at ¶ 56.

Plaintiff was arrested on March 12, 2012 for violating the Final Order. *Id*. at ¶ 57. The prosecution presented a "Permanent Civil Protection Order" (PCPO) that neither Plaintiff nor his counsel had seen previously. *Id*. at ¶ 61. The PCPO named Plaintiff's children as protected parties.

4

At a January 14, 2013 hearing, Defendant Mosness testified that he established probable cause for Plaintiff's arrest from documents that did not include the children as protected parties, and that he asked Defendant Cooper to update the computer system to reflect a "no-contact" order between Plaintiff and his children.  *Id.* at ¶ 68.   The court dismissed the case, finding that there was no probable cause to arrest Plaintiff.  *Id.* at ¶ 69.  However, the court stated that it believed the PCPO was a valid order, and admonished Plaintiff not to contact his children.  *Id.*  As a consequence, Plaintiff has not seen his children since 2007 and, as of the date of filing the Amended Complaint in this action, had not contacted them since February 2012 for fear of being arrested.  *Id.* at ¶ 72.

On February 22, 2013, Plaintiff filed a Petition for Declaratory Judgment regarding the validity of the PCPO in the Eagle County District Court.  *Id.* at ¶ 79.  On March 27, 2013, the Eagle County District Court ruled that the PCPO was not valid.  *Id.* at ¶ 80.

## II.    Procedural Background

Plaintiff's Amended Complaint alleges that Defendant Cooper violated his civil rights pursuant to 42 U.S.C. § 1983 for false arrest, malicious prosecution, and failure to implement appropriate policies, customs and practices.  He also claims that Defendant Cooper engaged in the tort of outrageous conduct.

Plaintiff filed a Response to the Motion to Dismiss on September 6, 2013.[2]  That same day, Plaintiff filed an Unopposed Motion to Dismiss (as relevant here) all claims against Defendant Cooper in her official capacity, and the "failure to implement appropriate policies, customs and practices" claim against Defendant Cooper.  Judge Blackburn granted Plaintiff's Unopposed Motion to Dismiss.  Thus, the following claims remain pending against Defendant Cooper in her individual

---

[2]To the extent Plaintiff includes in his response a motion for leave to amend complaint, such motion fails to comply with D.C.Colo.LCivR 7.1(c), which states: "A motion shall not be included in a response or reply to the original motion.  A motion shall be made in a separate paper."

capacity: violation of civil rights, false arrest, malicious prosecution, and outrageous conduct.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191 .

## ANALYSIS

The Court will address each of the defenses raised by Defendant Cooper in her Motion to

Dismiss: absolute judicial immunity for all of Plaintiff's claims, qualified immunity for Plaintiff's constitutional claims, and failure to state claims upon which relief can be granted for each of Plaintiff's claims.

## I.   Absolute Quasi-Judicial Immunity Defense

Defendant Cooper contends that she is entitled to absolute judicial immunity for acts she performed as the Clerk of Court for the Eagle Combined Courts.  It is well-settled that the doctrine of judicial immunity applies to actions brought pursuant to Section 1983.  *Van Sickle v. Holloway*, 791 F.2d 1431, 1434-35 (10th Cir. 1986) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Under the doctrine of absolute judicial immunity, "[j]udges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction."  *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir. 2000).  "Moreover, '[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)).  This judicial immunity may extend to persons other than judges where performance of judicial acts or activity as an official aid of the judge is involved.  *See id.*  "Thus, absolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" *Id.* (quoting *Eades v. Sterlinske,* 810 F.2d 723, 726 (7th Cir. 1987)).

Courts have specifically extended absolute immunity to court clerks under a variety of circumstances.  *See Rodriguez v Wepris*, 116 F.3d 62, 66-67 (2d Cir. 1997) (affirming grant of immunity for harms allegedly wrought by clerk's delay in scheduling appeal); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (same for charge that clerk conspired with others to have plaintiff committed to mental institution).  The Tenth Circuit has recognized the availability of absolute immunity to court clerks who perform "quasi-judicial" duties.  *See Henriksen v. Bentley*, 644 F.2d

852, 855 (10th Cir. 1981); *McKinney v. Oklahoma Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (recognizing judicial immunity for court clerk for alleged civil rights violations arising out of felony and juvenile proceedings); *Newton v. Buckley*, 127 F.3d 1109, 1997 WL 642085, at *4 (10th Cir. 1997) (holding court clerk did not act in absence of all jurisdiction and was therefore absolutely immune from suit even if she did not follow proper procedures in issuing a bench warrant and using the judge's stamped signature); *Bell v. Manspeaker*, 34 F. App'x 637, 641, 2002 WL 532415, at *3 (10th Cir. 2002) (holding court clerk absolutely immune from suit for allegations arising from clerk's role in coordinating security in Timothy McVeigh trial).

Here, Plaintiff alleges that Defendant Cooper was responsible for unlawful record entries concerning the Final Order against Plaintiff. Although "[a]bsolute judicial immunity generally extends to non-judicial officers performing discretionary judicial acts," *Whitesel*, 222 F.3d at 869, Plaintiff contends that Defendant Cooper "abused her discretion by exercising judicial and quasi-judicial functions that were beyond the powers allowed her by law." Amended Complaint, ¶ 76. Absolute judicial immunity does not apply when a judge or a judge's aid acts in "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57; *Whitesal*, 222 F.3d at 868. "However, even if the [non-judicial] officers exceeded their authority or committed grave procedural errors in issuing the discretionary orders, such actions do not equate to acting in clear absence of all jurisdiction." *Whitesel*, 222 F.3d at 869.

The allegations state that Defendant Mosness directed Defendant Cooper to "update the language of the protection order in the CCIC/NCIC computer[,]" and that a "no contact" Order between Plaintiff and his children had been added to CCIC/NCIC subsequent to February 14, 2012. Amended Complaint, ¶ 51, 56. The allegations contain no information about the duties that fall within Defendant Cooper's jurisdiction as court clerk. *See Whitesel*, 222 F.3d at 869. Thus, the

matter of absolute quasi-judicial immunity depends on facts that go beyond Plaintiff's factual allegations. Without information about Defendant Cooper's duties as court clerk, the Court is not in a position to determine whether Defendant Cooper was in clear absence of all jurisdiction when she changed the Final Order on the computer system, as Plaintiff alleges. Accordingly, the Court recommends that the District Court find Defendant Cooper is not entitled to absolute judicial immunity on this juncture of the case.

## II.   Constitutional Claims

Defendant Cooper asserts that she is entitled to qualified immunity on the Section 1983 claims against her, and that those claims should be dismissed for failure to state claims upon which relief can be granted pursuant to Rule 12(b)(6). Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of

the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Because the inquiry as to whether Plaintiff has plead facts showing the violation of a constitutional right requires the same analysis as a failure to state a claim defense, the Court will consider these 12(b)(6) defenses together for each constitutional claim against Defendant Cooper.

### A.      General Civil Rights Violation

Plaintiff's first claim for relief alleges "Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983." Plaintiff states that the violations include deprivation of the right to be free from unreasonable seizures and the right not to be deprived of liberty without due process of law. Amended Complaint, ¶ 83. To the extent these allegations are meant to state claims for relief separate from those delineated in the remainder of the operative pleading, such legal conclusions are insufficient to establish that Defendant Cooper violated Plaintiff's constitutional rights pursuant to the first prong of the qualified immunity analysis. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (explaining that "mere, 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice" to overcome a motion to dismiss) (quoting *Twombly*, 550 U.S. at 555). For the same reason, the general allegations fail to state a claim upon which relief could be granted under Rule 12(b)(6).

### B.      False Arrest

Plaintiff's second claim for relief alleges false arrest. To maintain a false arrest claim under Section 1983, Plaintiff must demonstrate the elements of a common law claim and show that his Fourth Amendment right to be free from unreasonable search and seizure has been violated. *See*

*Pierce v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004) (evaluating a Section 1983 claim based on a common law tort, the elements of the tort serve "as an important guidepost for defining the constitutional cause of action," but "the ultimate question is always whether the plaintiff has alleged a constitutional violation.") (citation omitted).  Under Colorado law, to establish a false arrest claim, a plaintiff must prove the following elements: (1) the defendant intended to restrict the plaintiff's freedom of movement; (2) the plaintiff's freedom of movement was restricted for a period of time, however short, either directly or indirectly, by an act of defendant; and (3) the plaintiff was aware that his freedom of movement was restricted.  CJI-Civ. 4th 21:1 (2013).  A claim for false arrest fails if the defendant had probable cause to believe that the plaintiff committed a criminal offense.  *Rose v. City & Cnty. of Denver*, 990 P.3d 1120, 1123 (Colo. App. 1999).

With regard to Defendant Cooper's conduct, the allegations state only that Defendant Cooper provided the Final Order to Defendant Mosness on February 15, 2012, and he directed her to "update" the computer system to reflect a "no-contact" Order between Plaintiff and his children. The Amended Complaint alleges that, several days later,  Plaintiff's parole officer refused to issue a parole violation because he determined that the "no contact" Order between Plaintiff and his children had been added to the computer database after February 14, 2012, the date when Plaintiff sent flowers to his daughter.

The allegations are sufficient to permit an inference that Defendant updated the Final Order, and that her update indirectly caused Plaintiff's arrest.  However, the pleadings are insufficient to demonstrate that Defendant Cooper intended that arrest to take place. Without any factual allegations about Defendant Cooper's intent, Plaintiff has failed to plead the necessary elements of a claim of false arrest, and has not met the first prong of the qualified immunity analysis. Consequently, Defendant Cooper should be entitled to qualified immunity for the false arrest claim

and the claim should be dismissed for failure to state a claim under Rule 12(b)(6).

### C.      Malicious Prosecution

Plaintiff's third claim for relief alleges malicious prosecution under Section 1983.  "A section 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008); *see also Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996) ("[O]ur circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of a Section 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a constitutional violation.").

Although Defendant Cooper did not prosecute Plaintiff, an individual who is not responsible for a plaintiff's arrest or for filing charges can still be held liable for malicious prosecution.  *Pierce v. Gilchrist*, 359 F.3d 1279, 1291 (10th Cir. 2004).  Applying that principle, the Tenth Circuit upheld a district court's denial of qualified immunity for a malicious prosecution claim against a forensic hair examiner accused of falsifying an investigative report and recording a "match" when one did not exist.  *Id*.  The Tenth Circuit explained that, as long as the defendant was "instrumental" in the plaintiff's continued confinement or prosecution, the defendant's lack of responsibility for initiating the action did not absolve her from total liability.  *Id*.

As noted above, the allegations provide for an inference that Defendant Cooper changed the Final Order to extend to Plaintiff's children.  Plaintiff was arrested for contacting his daughter in violation of that Final Order.  However, Plaintiff makes no factual allegations about Defendant Cooper's involvement in Plaintiff's prosecution.  Though it is *conceivable*, based on the allegations,

that Defendant Cooper was responsible for the PCPO - the updated order naming the children as protected parties that the prosecution relied upon in its case - such an inference is tenuous based on the pleadings. Plaintiff does not allege that Defendant Cooper actually followed Defendant Mosness's directive to update the computer entry; it can be reasonably inferred that she did so based on the allegation that the computer entry was updated around the time that Defendant Mosness directed her to do so. However, it is unclear from the pleadings how or when the PCPO came about, and Defendant Cooper is not accused of manufacturing it. While it is conceivable that her computer update *was* the PCPO or that the update made possible someone else's manufacturing of the PCPO, without more detailed factual allegations, Plaintiff has "'not nudged [his] claim[] across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191 (quoting *Robbins,* 519 F.3d at 1247). Though the allegations bear similarities to those involved in *Pierce*, the facts do not sufficiently allege Defendant Cooper was "instrumental" in Plaintiff's prosecution, as the forensic examiner was in that case. *See Pierce*, 359 F.3d at 1291.

Mindful that the District Court may disagree and find that Defendant Cooper's alleged conduct meets the first element of a malicious prosecution claim, the Court will address the remaining four elements.

The second, third and fifth elements are sufficiently alleged because the case against Plaintiff was dismissed for lack of probable cause, and Plaintiff states he has suffered damages because he has not been in contact with his children since the arrest as a result of the PCPO and the court's admonishments.

With regard to the fourth element, although Plaintiff alleges that "Defendants' actions and inactions were with malice," Amended Complaint, ¶ 93, Plaintiff does not plead any specific facts to support that statement with regard to Defendant Cooper. Nonetheless, under Colorado law,

13

"malice may be inferred from a lack of probable cause." *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006) (citing *Suchey v. Stiles*, 155 Colo. 363, 366, 394 P.2d 739, 741 (Colo.1964)).  Because the charge against Plaintiff was ultimately dismissed for lack of probable cause, a jury arguably may infer from the allegations that Defendant Cooper acted with malice by updating the language of the Final Order in such a way that caused Plaintiff's arrest and subsequent prosecution.

Assuming Plaintiff sufficiently pled a constitutional violation pursuant to the first prong of the qualified immunity test, the tenuous connection between Defendant Cooper's actions and Plaintiff's subsequent prosecution does not meet the second prong of the qualified immunity analysis.  For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotations omitted).  "A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Riggins*, 572 F.3d at 1107.  Plaintiff has not referenced any cases that would clearly advise Defendant Cooper that her conduct was unconstitutional.  On the present facts, a reasonable court clerk would not be on notice that her computer updates would result in an unlawful prosecution.  Thus, even if the District Court finds that Plaintiff pled sufficient facts to overcome a failure to state a claim defense, this Court recommends that the District Court conclude the alleged violation was not clearly established and Defendant Cooper is entitled to qualified immunity.

### III.    Outrageous Conduct Claim

The elements of liability for the tort of outrageous conduct are that: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in the conduct recklessly or

14

with the intent of causing the plaintiff severe emotional distress; and (3) the plaintiff incurred severe emotional distress which was caused by the defendant's conduct. *Culpepper v. Pearl Street Bldg., Inc.*, 877 P. 2d 877, 882 (Colo. 1994). "A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result." *Id*. Though the Amended Complaint generally alleges that all of the Defendants acted recklessly or intentionally, it contains no specific allegations that Defendant Cooper acted with the purpose of causing severe emotional distress to Plaintiff, or that she knew her conduct was certain or substantially certain to cause that result. The only factual allegations regarding her conduct are that she provided Defendant Mosness with the Final Order, and he directed her to update that Order. The Court may be able to infer that Defendant Cooper followed that directive, because the Order was allegedly updated by someone, but the Court cannot infer Defendant Cooper's state of mind based on the present factual allegations.

Accordingly, the outrageous conduct claim against Defendant Cooper should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## **CONCLUSION**

In sum, the Court finds as follows:

1. Defendant Cooper's absolute immunity defense fails because it lacks factual support at this point in the litigation;

2. Defendant Cooper is entitled to qualified immunity for the section 1983 claims; and

3. Plaintiff's outrageous conduct claim against Defendant Cooper fails because it fails to state a claim upon which relief can be granted.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully

15

RECOMMENDS that Defendant Cooper's Motion to Dismiss [filed July 8, 2013; docket #32] be

**GRANTED**.

Entered and dated at Denver, Colorado, this 12th day of November, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge