IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00393-REB-MEH

STAN CHAMBERS,

    Plaintiff,

v.

JACKIE COOPER, in her official capacities,
JOSEPH D. HOY, Eagle County Sheriff, in his official capacity,
HEATH MOSNESS, Eagle County Deputy Sheriff, in his individual and official capacities,
TAD DEGEN, Eagle County Deputy Sheriff, in his individual and official capacities,
ERIC MANDEVILLE, in his individual capacity, and
KIMBERLY JAMES, in her individual capacity,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is the School District Defendants' Motion to Dismiss [filed July 26, 2013; docket #41]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #42]. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motion to Dismiss be **granted in part and denied in part**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such

**BACKGROUND**

Plaintiff Stan Chambers initiated this lawsuit on February 13, 2013. The Amended Complaint contains four claims against Defendants Eric Mandeville and Kimberly James ("the School Defendants") for violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, and one claim for outrageous conduct. The claims arise from Plaintiff's arrest for violating terms and conditions of a restraining order that was later declared invalid by Eagle County District Court.

**I.   Facts**

The following are factual allegations made by Plaintiff in his Amended Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On January 21, 2005, Defendant James (formally Chambers), Plaintiff's wife at the time, obtained a Temporary Protection Order against Plaintiff. Amended Complaint, ¶ 16, docket #9. The temporary order was made permanent on February 3, 2005 ("the Protection Order"). *Id*. at ¶ 18. The Protection Order did not include the parties' children as protected persons; it was a "no contact" order between Plaintiff and Defendant James only. *Id*. at ¶¶ 17-18.

On April 7, 2005, Plaintiff and Defendant James divorced. *Id*. at ¶ 19. The Protection Order was dismissed and simultaneously incorporated verbatim into the Final Dissolution Decree ("the

---

written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

Final Order"). *Id*. Defendant James was awarded sole custody of the couple's two children. *Id*.

For undisclosed reasons, Plaintiff was sentenced to six years in the Department of Corrections ("DOC") on August 10, 2007. *Id*. at ¶ 20. He was released on parole on March 24, 2011. *Id*. Despite living what Plaintiff describes as "a non-functional life" in the years before he was incarcerated, Plaintiff chose to change while in prison, "as evidenced by his life of sobriety, spirituality and integrity[,] his position as a highly valued employee[,] and having the support and confidence of his family, employer, and Parole Officers." *Id*. at ¶ 21.

While Plaintiff was incarcerated, he was authorized by his DOC case manager to contact his children by mail. *Id*. at ¶ 22. He wrote letters to his children the entire time he was incarcerated, though the children only wrote back to him during the first year. *Id*. at ¶ 23. When Plaintiff was released in 2011, his case manager again informed him that he was authorized to send gifts and letters to his children. *Id*. at ¶ 25. However, when he mailed gifts, cards and money to his children at their home address, Defendant James filed a report with the Eagle County Police Department ("the Police Department"). *Id*. at ¶ 26. The report claimed that Plaintiff "has been stalking her and violating a protection order that protects her and her children," and that she "is upset over the mail to their home and telephone calls [from Plaintiff] to [his daughter's] school." *Id*. at ¶¶ 27-28.

Officer Arnold, the police officer investigating Defendant James' report, determined that the children were not protected parties in the Final Order. *Id*. at ¶ 29. Nevertheless, Officer Arnold contacted Defendant Tad Degen, the school resource officer at the children's school, and "told [him] about this case." *Id*. at ¶ 31. Officer Arnold also contacted the school principal and told her about the Final Order. *Id*. at ¶ 32. The principal "wanted to post a photograph of [Plaintiff] in the office so that if he is seen, they call the police immediately." Defendant James was an employee at the

school. *Id*. at ¶ 13.

On February 14, 2012, Plaintiff sent a dozen roses to his daughter at school with a card that said, "Happy Valentine's sweetheart[.]  I miss you[.]  Love Dad."  *Id*. at ¶ 34.  The school's secretary did not deliver the flowers because "there was a restraining order in place."  *Id*. at ¶ 36. Defendant Mandeville, the assistant principal, delivered the flowers to Defendant Degen, and contacted Defendant James.  *Id*.  Defendant James contacted Plaintiff's parole officer no fewer than three times, asking that Plaintiff be arrested.  *Id*. at ¶ 37.  The parole officer told Defendant James to stop calling him.  *Id*.

Defendant James also contacted Defendant Heath Mosness at the police department and reported that Plaintiff was harassing their daughter and violating a restraining order.  *Id*. at ¶ 38. Defendant Mosness researched the CCIC database and found the April 7, 2005 order attached to the dissolution case, which stated "distance of 50 yards, excluded from 126 Ringneck, Eagle, Work Gypsum Elementary School, Hairwest 23 Snow Owl, Avon.  Not [sic] harrass stalk, threaten or molest plaintiff or otherwise violate this order."  *Id*. at ¶ 40.  Defendant James was the only plaintiff in the dissolution proceeding, and the addresses were places where Defendant James worked and lived in 2005.  *Id*.

Defendant Mosness told Defendant James that the children were not included in the Final Order.  *Id*. at ¶ 41.  Defendant James responded that "she had spoken with the courts to try to get the language changed and it hasn't happened."  *Id*. at ¶ 42.  Defendant Mosness said that he would call the courts to try to clarify the language in the Final Order.  *Id*. at ¶ 44.  He then directed Defendant Jackie Cooper, who was Clerk of Court for the Eagle Combined Courts, to update the language of the Final Order in the computer system.  *Id*. at ¶ 51.  Defendant Mosness prepared an Affidavit for

Arrest of Plaintiff on February 17, 2012. *Id*. at ¶ 53. He also contacted Plaintiff's parole officer and requested a parole violation be issued. *Id*. at ¶ 55. The parole officer refused, determining that the entry of a "no contact" order between Plaintiff and his children was added to the computer system after the February 14, 2012 flower delivery. *Id*. at ¶ 56.

Plaintiff was arrested on March 12, 2012 for violating the Final Order. *Id*. at ¶ 57. The prosecution presented a "Permanent Civil Protection Order" (PCPO) that neither Plaintiff nor his counsel had seen previously. *Id*. at ¶ 61. The PCPO named Plaintiff's children as protected parties. At a January 14, 2013 hearing, Defendant Mosness testified that he established probable cause for Plaintiff's arrest from documents that did not include the children as protected parties, and that he asked Defendant Cooper to update the computer system to reflect a "no-contact" order between Plaintiff and his children. *Id*. at ¶ 68. The state court dismissed the case, finding that there was no probable cause to arrest Plaintiff. *Id*. at ¶ 69. However, the court stated that it believed the PCPO was a valid order, and admonished Plaintiff not to contact his children. *Id*. As a consequence, Plaintiff has not seen his children since 2007 and, as of the date of filing the Amended Complaint in this action, had not contacted them since February 2012 for fear of being arrested. *Id*. at ¶ 72.

On February 22, 2013, Plaintiff filed a Petition for Declaratory Judgment regarding the validity of the PCPO in the Eagle County District Court. *Id*. at ¶ 79. On March 27, 2013, the Eagle County District Court ruled that the PCPO was not valid. *Id*. at ¶ 80.

## II.     Procedural Background

Plaintiff's Amended Complaint alleges that Defendants Eagle County School District, Mandeville and James violated his civil rights pursuant to 42 U.S.C. § 1983 for false arrest, malicious prosecution, and failure to implement appropriate policies, customs and practices. He also

claims that the Defendants engaged in the tort of outrageous conduct.

Plaintiff filed a Response to the Motion to Dismiss on September 6, 2013.[2] That same day, Plaintiff filed an Unopposed Motion to Dismiss (as relevant here) all claims against Defendant Eagle County School District. Judge Blackburn granted Plaintiff's Unopposed Motion to Dismiss. Thus, the Motion to Dismiss now pertains only to the claims against Defendants Mandeville and James.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d

---

[2]To the extent Plaintiff includes in his response a motion for leave to amend complaint, such motion fails to comply with D.C.Colo.LCivR 7.1(c), which states: "A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."

1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## ANALYSIS

The Court will address each of the defenses raised by the School District Defendants in their Motion to Dismiss: qualified immunity for Plaintiff's Section 1983 false arrest and malicious prosecution claims, and failure to state a claim upon which relief can be granted for Plaintiff's outrageous conduct claim.[3]

**I.    Qualified Immunity**

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to

---

[3] Plaintiff's claim for failure to implement appropriate policies, customs and practices is directed at Eagle County School District, which is no longer a defendant in this action. To the extent that Plaintiff asserts this claim against the School District Defendants in their individual capacities, he does not allege that they had any authority, responsibility, or involvement in implementing policies, customs and practices. Thus, Plaintiff has failed state a claim for failure to implement appropriate policies, customs and practices against the School District Defendants upon which relief can be granted pursuant to Rule 12(b)(6).

overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). The Court will first analyze whether Plaintiff has stated constitutional violations, and, if he has, will proceed to analyze whether the violation was clearly established.

### A.     General Civil Rights Violation

Plaintiff's first claim for relief alleges "Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983." Plaintiff states that the violations include deprivation of the right to be free from unreasonable seizures and the right not to be deprived of liberty without due process of law. Amended Complaint, ¶ 83. To the extent these allegations are meant to state claims for relief separate from those delineated in the remainder of the operative pleading, such legal conclusions are insufficient to establish that the School District Defendants violated Plaintiff's constitutional rights pursuant to the first prong of the qualified immunity analysis. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (explaining that "mere, 'labels and conclusions,'

and 'a formulaic recitation of the elements of a cause of action' will not suffice" to overcome a motion to dismiss) (quoting *Twombly*, 550 U.S. at 555).

### B.   False Arrest

Plaintiff's second claim for relief alleges false arrest. To maintain a false arrest claim under Section 1983, Plaintiff must demonstrate the elements of a common law claim and show that his Fourth Amendment right to be free from unreasonable search and seizure has been violated. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1289 (10th Cir. 2004) (evaluating a Section 1983 claim based on a common law tort, the elements of the tort serve "as an important guidepost for defining the constitutional cause of action," but "the ultimate question is always whether the plaintiff has alleged a constitutional violation") (citation omitted). Under Colorado law, to establish a false arrest claim, a plaintiff must prove the following elements: (1) the defendant intended to restrict the plaintiff's freedom of movement; (2) the plaintiff's freedom of movement was restricted for a period of time, however short, either directly or indirectly, by an act of defendant; and (3) the plaintiff was aware that his freedom of movement was restricted. CJI-Civ. 4th 21:1 (2013). A claim for false arrest fails if the defendant had probable cause to believe that the plaintiff committed a criminal offense. *Rose v. City & Cnty. of Denver*, 990 P.3d 1120, 1123 (Colo. App. 1999).

#### i.  Defendant Mandeville

The Amended Complaint contains several general allegations that Defendant Mandeville violated Plaintiff's constitutional rights. However, the Amended Complaint contains only one paragraph with specific factual allegations regarding Defendant Mandeville's actions:

> The Secretary of the High School did not deliver the flowers because "...there was a restraining order in place." Defendant Mandeville was informed of the flowers and caused them to be delivered to Defendant Degen. Defendant Mandeville also contacted Defendant James who

9

> in turn also contacted the Sheriff's Department and spoke Defendant Mosness. The flowers and the card were never delivered to [Plaintiff's] daughter.

Amended Complaint, ¶ 36.

Plaintiff also alleges that Defendant Mosness spoke to Defendant Mandeville on February 14, 2012, but he does not elaborate about the context or substance of that conversation. Even assuming Defendant Mandeville's involvement indirectly caused Plaintiff's arrest in satisfaction of the second element of a false arrest claim, there are no allegations about Defendant Mandeville's intent. The allegation that Defendant Mandeville contacted Defendant Degen (the school resource officer) and Plaintiff's ex-wife instead of delivering the flowers to Plaintiff's daughter are insufficient to establish an inference that Defendant Mandeville intended to restrict Plaintiff's freedom of movement.

Accordingly, Plaintiff has failed to show that Defendant Mandeville violated his constitutional right pursuant to the first prong of the qualified immunity analysis. The Court therefore recommends that Defendant Mandeville is entitled to qualified immunity for the Section 1983 false arrest claim.

### ii. Defendant James

Although the Amended Complaint also lacks allegations about Defendant James' state of mind, it contains more specific factual allegations about her conduct. Plaintiff alleges that Defendant James contacted the Police Department before the February 14 flower incident and reported that Plaintiff had been violating a retraining order that protects her and her children. According to the allegations, when Defendant James learned that Plaintiff had sent flowers to their daughter, she called Plaintiff's parole officer "no fewer than three times" asking that Plaintiff be

arrested. She also contacted the Police Department and reported that Plaintiff had violated a restraining order by sending the flowers. Based on the foregoing allegations, it can be reasonably inferred that Defendant James intended to have Plaintiff arrested, or otherwise restrict his movements, in satisfaction of the first element for a false arrest claim.

With regard to the second factor, Defendant James' contact with the Police Department could have indirectly caused Plaintiff's arrest. Plaintiff alleges that Defendant James called the Police Department to report his contact with their children even before the February 14 incident. Defendant James allegedly told officers that Plaintiff was violating a restraining order by contacting his children. When an officer told her that there was no such restraining order in place, she responded that "she had spoken with the courts to try to get the language changed and it hasn't happened." Amended Complaint, ¶ 42. Based on these allegations, a jury could infer that Defendant James' actions were the indirect cause of Plaintiff's arrest, satisfying the second element for false arrest. Finally, the allegations clearly establish that Plaintiff knew his movement was restricted when he was arrested and detained on March 12, 2012 in satisfaction of the third element.

Plaintiff has met the first prong of the qualified immunity analysis by sufficiently alleging facts that Defendant James violated his Fourth Amendment right to be free from false arrest. The Court next addresses the second prong of the qualified immunity analysis. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotations omitted). While a plaintiff does not have to present a case with an identical factual situation, the plaintiff must show legal authority making it "apparent that in the light of pre-existing law a reasonable official would have known that the conduct in question violated the

constitutional right." *Swanson v. Town of Mountain View*, 577 F.3d 1196, 1200 (10th Cir. 2009). (internal quotation marks and ellipsis omitted). "The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). The specific elements of a claim of false arrest in Colorado were also clearly established when the alleged conduct occurred. *See, e.g., Goodboe v. Gabriella*, 663 P.2d 1051, 1055-56 (Colo. App. 1983); *see also Brudwick v. Minor*, No. 05-cv-00601-WYD-MJW, 2006 WL 1991755, at *19 (D. Colo. 2006); (applying Colorado common law elements to a false arrest claim).

Plaintiff alleges that Defendant James knew that the children were not included in the Final Order. When Defendant Mosness discovered that a restraining order for Plaintiff's children did not exist, the allegations state that "Defendant James expressed that she understood that there was no protection order between [Plaintiff] and his children despite her persistent insistence to others that there was." Amended Complaint, ¶ 43. In November 2011, before the flower incident, another officer also determined that there was no restraining order for the children, despite Defendant James' allegations to the contrary. Knowing that Plaintiff was not violating any order, Defendant James nonetheless sought his arrest by Plaintiff's parole officer, and reported to the Police Department that he had violated a restraining order. Based on these allegations, a reasonable person in Defendant James' position would have known that her conduct was unlawful. *See Harlow*, 457 U.S. at 818.

Accordingly, the Court recommends that Defendant James is not entitled to qualified immunity for the false arrest claim.

### C. Malicious Prosecution

Plaintiff's third claim for relief alleges malicious prosecution under Section 1983. "A

section 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008); *see also Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996) ("[O]ur circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of a Section 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a constitutional violation.").

### i. Defendant Mandeville

According to the Amended Complaint, Defendant Mandeville's involvement in the events leading to Plaintiff's arrest was limited. Again, as described in section I(B)(i) above, the only factual allegations about Defendant Mandeville are as follows:

> The Secretary of the High School did not deliver the flowers because "...there was a restraining order in place." Defendant Mandeville was informed of the flowers and caused them to be delivered to Defendant Degen. Defendant Mandeville also contacted Defendant James who in turn also contacted the Sheriff's Department and spoke Defendant Mosness. The flowers and the card were never delivered to [Plaintiff's] daughter.

Amended Complaint, ¶ 36.

These allegations are simply insufficient to establish that Defendant Mandeville's actions caused Plaintiff's arrest. Moreover, even assuming Plaintiff alleged a malicious prosecution violation against Defendant Mandeville in satisfaction of the first prong of the qualified immunity analysis, the allegations fail to demonstrate that the constitutional violation was clearly established at the time of the alleged unlawful activity. There are no allegations that Defendant Mandeville

13

knew that the children were not included in the Final Order, or that a reasonable official in his position would know that his contacting the school's resource officer and Plaintiff's ex-wife about the flower delivery would result in Plaintiff's prosecution.

"A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Riggins*, 572 F.3d at 1107. Plaintiff has not referenced any cases that would clearly advise Defendant Mandeville that his conduct was unconstitutional.

Accordingly, the Court recommends that Defendant Mandeville is entitled to qualified immunity for the malicious prosecution claim.

### ii. Defendant James

Although Defendant James did not prosecute Plaintiff, an individual who is not responsible for a plaintiff's arrest or for filing charges can still be held liable for malicious prosecution. *Pierce v. Gilchrist*, 359 F.3d 1279, 1291 (10th Cir. 2004). Applying that principle, the Tenth Circuit upheld a district court's denial of qualified immunity for a malicious prosecution claim against a forensic hair examiner accused of falsifying an investigative report and recording a "match" when one did not exist. *Id*. The Tenth Circuit explained that, as long as the defendant was "instrumental" in the plaintiff's continued confinement or prosecution, the defendant's lack of responsibility for initiating the action did not absolve her from total liability. *Id*.

Aside from allegations about Defendant James' insistence that a restraining order did or should exist, the Amended Complaint contains no other factual allegations about why the prosecution against Plaintiff occurred or why the PCPO - the updated order naming the children as protected parties that the prosecution relied upon in its case - was created. Reading the Amended

Complaint as a whole, however, it appears that Defendant James' proactive communication with the Police Department regarding Plaintiff's contact with their children was "instrumental" in the prosecution. Thus, although there are no allegations about Defendant James' direct involvement in the legal proceedings, the allegations are sufficient to establish that Defendant James' actions caused Plaintiff's prosecution in satisfaction of the first element of a malicious prosecution claim.

Plaintiff has sufficiently alleged the second, third and fifth elements because the case against him was dismissed for lack of probable cause, and Plaintiff states he has suffered damages because he has not been in contact with his children since the arrest as a result of the PCPO and the court's admonishments.

With regard to the fourth element, although Plaintiff alleges that "Defendants' actions and inactions were with malice," Amended Complaint, ¶ 93, Plaintiff does not plead any specific facts to support that statement with regard to Defendant James. Nonetheless, under Colorado law, "malice may be inferred from a lack of probable cause." *Barton v. City & Cnty. of Denver*, 432 F. Supp. 2d 1178, 1194 (D. Colo. 2006) (citing *Suchey v. Stiles*, 155 Colo. 363, 366, 394 P.2d 739, 741 (Colo.1964)). Because the charge against Plaintiff was ultimately dismissed for lack of probable cause, a jury arguably may infer that Defendant James acted with malice by insisting that a "no contact" order between Plaintiff and their children did or should exist.

Plaintiff has alleged sufficient facts to demonstrate that Defendant James violated his constitutional rights; the Court next addresses the second prong of the qualified immunity analysis. "[I]t of course has long been clearly established that knowingly arresting a defendant without probable cause, leading to the defendant's subsequent confinement and prosecution, violates the Fourth Amendment's proscription against unreasonable searches and seizures." *Wilkins v. DeReyes*,

528 F.3d 790, 805 (10th Cir. 2008). As discussed in section I(B)(ii) above, the allegations state that Defendant James understood that the children were not included in the Final Order; thus, Defendant James knew that Plaintiff had not violated an order. By seeking his arrest for violations she knew had not occurred, she engaged in conduct that violated Plaintiff's clearly established constitutional rights.

Accordingly, the Court respectfully recommends that Defendant James is not entitled to qualified immunity for the malicious prosecution claim.

## II. Outrageous Conduct

The elements of liability for the tort of outrageous conduct are that: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the plaintiff incurred severe emotional distress which was caused by the defendant's conduct. *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994).

The threshold issue is whether Plaintiff has alleged conduct that is outrageous as a matter of law. *Green v. Qwest Services Corp.*, 155 P.3d 383, 385 (Colo. App. 2006). "The level of outrageousness required to constitute extreme and outrageous conduct is extremely high." *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 990 (Colo. App. 2011). The conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quoting Restatement (Second) of Torts § 46 (1965)).

Defendant Mandeville did not attempt to have Plaintiff arrested, and the allegations support an inference that he was acting on a belief that there was a retraining order in place. Thus, Plaintiff

has not met the threshold requirement of showing that Defendant Mandeville's conduct was outrageous.

By contrast, Plaintiff alleges that Defendant James sought to have him arrested and prosecuted for sending flowers to his daughter on Valentine's Day; there was no restraining order restricting Plaintiff's contact with his children, and no factual allegations that Plaintiff's contact with his children was harmful to them. Thus, according to the Amended Complaint, there was no reasonable explanation for Defendants' actions. Absent any factual allegations explaining the reasoning for Defendant James' conduct, her efforts not only to prevent Plaintiff from contacting his daughter - but have him arrested for sending her flowers at school - constitutes outrageous conduct.

With regard to Defendant James' intent, Plaintiff alleges that she understood that there was no restraining order against Plaintiff, yet she told authorities otherwise. "A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result." *Culpepper*, 877 P.2d at 882. Although the Amended Complaint generally alleges that all of the Defendants acted recklessly or intentionally, it contains no specific allegations about Defendant James' intent. Nonetheless, the allegation that Defendant James knew there was no restraining order in place is sufficient to draw a plausible inference that she either intended to cause severe emotional distress or that she knew her efforts to have Plaintiff arrested were substantially certain to have that result.

With regard to the third element, Plaintiff has sufficiently alleged severe emotional distress resulting from the arrest, subsequent prosecution, admonishments from the court not to contact his

children based on the PCPO, and his resulting fear of contacting his children. Thus, Plaintiff has sufficiently alleged the elements of an outrageous conduct claim against Defendant James to overcome a motion to dismiss.

Accordingly, the Court recommends that Plaintiff's outrageous conduct claim against Defendant Mandeville be dismissed under Rule 12(b)(6), and that the claim be allowed to proceed against Defendant James.

## CONCLUSION

In sum, the Court finds as follows:

1. Defendant Mandeville is entitled to qualified immunity for all of the Section 1983 claims against him;

2. Defendant James is entitled to qualified immunity for the general Section 1983 claim against her but is not entitled to qualified immunity for the Section 1983 false arrest and malicious prosecution claims against her;

4. Plaintiff's failure to implement appropriate policies, customs and practices claim against the School District Defendants fails because it does not state a claim upon which relief can be granted; and

5. Plaintiff's outrageous conduct claim against Defendant Mandeville fails to state a claim upon which relief can be granted; however, the outrageous conduct claim against Defendant James states a claim upon which relief can be granted.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that the School District's Defendants' Motion to Dismiss [filed July 26, 2013; docket #41] be **GRANTED IN PART AND DENIED IN PART** as follows:

1. Plaintiff's claims against Defendant Mandeville be dismissed;

2. Plaintiff's first and fourth claims against Defendant James be dismissed; and

3. Plaintiff's second, third and fifth claims against Defendant James be allowed to proceed.

Entered and dated at Denver, Colorado, this 12th day of November, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge