IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00393-REB-MEH

STAN CHAMBERS,

Plaintiff,

v.

HEATH MOSNESS, Eagle County Deputy Sheriff, in his individual capacity,

Defendant.

---

**RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE**

---

Before the Court are Plaintiff's Motion for Leave to File Second Amended Complaint [filed November 3, 2014; docket #103], and Plaintiff's Motion to Amend Scheduling Order [filed November 3, 2014; docket #104]. Both Motions are referred to this Court for disposition. (Docket #105.) The motions are fully briefed, and oral argument would not materially assist the Court in their adjudication. For the reasons that follow, the Court respectfully RECOMMENDS that the Motion for Leave to File Second Amended Complaint be **denied** and ORDERS that the Motion to Amend Scheduling Order be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## I. Factual Allegations

The following are factual allegations made by Plaintiff in his Proposed Second Amended Complaint. On January 21, 2005, Kimberly James (formally Chambers), Plaintiff's wife at the time, obtained a Temporary Protection Order against Plaintiff. (Docket #106, ¶ 10.) The temporary order was made permanent on February 3, 2005 ("the Protection Order"). *Id*. at ¶ 12. The Protection Order did not include the parties' children as protected persons; it was a "no contact" order between Plaintiff and Ms. James only. *Id*. at ¶¶ 11-12.

On April 7, 2005, Plaintiff and Ms. James divorced. *Id*. at ¶ 13. The Protection Order was dismissed and simultaneously incorporated verbatim into the Final Dissolution Decree. *Id*. Ms. James was awarded sole custody of the couple's two children. *Id*.

For undisclosed reasons, Plaintiff was sentenced to six years in the Department of Corrections ("DOC") on August 10, 2007. *Id*. at ¶ 14. He was released on parole on March 24, 2011. *Id*. Despite living what Plaintiff describes as "a non-functional life" in the years before he was incarcerated, Plaintiff "chose to change" while in prison, "as evidenced by his life of sobriety, spirituality and integrity[,] his position as a highly valued employee[,] and having the support and confidence of his family, employer, and Parole Officers." *Id*. at ¶ 15.

While Plaintiff was incarcerated, he was authorized by his DOC case manager to contact his children by mail. *Id*. at ¶ 16. He wrote letters to his children the entire time he was incarcerated, though the children only wrote back to him during the first year. *Id*. at ¶ 17. When Plaintiff was released in 2011, his case manager again informed him that he was authorized to send gifts and letters to his children. *Id*. at ¶ 19. However, when he mailed gifts, cards and money to his children at their home address, Ms. James filed a report with the Eagle County Police Department. *Id*. at ¶

20. The report claimed that Plaintiff "has been stalking her and violating a protection order that protects her and her children," and that she "is upset over the mail to their home and telephone calls [from Plaintiff] to [his daughter's] school." *Id*. at ¶¶ 21-22.

Officer Arnold, the police officer investigating Ms. James' report, determined that the children were not protected parties in the Final Dissolution Decree. *Id*. at ¶ 23. Nevertheless, Officer Arnold contacted Tad Degen, the School Resource Officer at the children's school, and "told [him] about this case." *Id*. at ¶ 25. Officer Arnold also contacted the school principal and told her about the Final Dissolution Decree. *Id*. at ¶ 26. The principal "wanted to post a photograph of [Plaintiff] in the office so that if he is seen, they call the police immediately." *Id*.

On February 14, 2012, Plaintiff sent a dozen roses to his daughter at school with a card that said, "Happy Valentine's sweetheart[.] I miss you[.] Love Dad." *Id*. at ¶ 28. The school's secretary did not deliver the flowers because "there was a restraining order in place." *Id*. at ¶ 30. Eric Mandeville, the assistant principal, delivered the flowers to Mr. Degen, and contacted Ms. James. *Id*. Ms. James contacted Plaintiff's parole officer no fewer than three times, asking that Plaintiff be arrested. *Id*. at ¶ 31. The parole officer told Ms. James to stop calling him. *Id*.

Ms. James also contacted Defendant Heath Mosness at the police department and reported that Plaintiff was harassing their daughter and violating the restraining order. *Id*. at ¶ 32. Defendant Mosness researched the Colorado Crime Information Center ("CCIC") database and found the April 7, 2005 order attached to the dissolution case, which stated "distance of 50 yards, excluded from 126 Ringneck, Eagle, Work Gypsum Elementary School, Hairwest 23 Snow Owl, Avon. Not [sic] harass stalk, threaten or molest plaintiff or otherwise violate this order." *Id*. at ¶ 34. Ms. James was the only plaintiff in the dissolution proceeding, and the addresses were places where Ms. James worked and lived in 2005. *Id*.

Defendant Mosness told Ms. James that the children were not included in the Final Dissolution Decree. *Id*. at ¶ 35. Ms. James responded that "she had spoken with the courts to try to get the language changed and it hasn't happened." *Id*. at ¶ 36. Defendant Mosness said that he would call the courts to try to clarify the language in the Final Dissolution Decree. *Id*. at ¶ 38. He then directed Jackie Cooper, who was Clerk of the Court for the Eagle Combined Courts, to update the language of the Final Dissolution Decree in the computer system. *Id*. at ¶ 43. Defendant Mosness prepared an Affidavit for Arrest of Plaintiff on February 17, 2012. *Id*. at ¶ 45. He also contacted Plaintiff's parole officer and requested a parole violation be issued. *Id*. at ¶ 47. The parole officer refused, determining that the entry of a "no contact" order between Plaintiff and his children was added to the computer system after February 14, 2012. *Id*. at ¶ 48.

Plaintiff was arrested on March 12, 2012 for violating the Final Dissolution Decree. *Id*. at ¶ 57. The prosecution presented a "Permanent Civil Protection Order" (PCPO) that neither Plaintiff nor his counsel had seen previously. *Id*. at ¶ 53. The PCPO named Plaintiff's children as protected parties. *Id*. at ¶ 54. At a January 14, 2013 hearing, Defendant Mosness testified that he established probable cause for Plaintiff's arrest from documents that did not include the children as protected parties, and that he asked Ms. Cooper to update the computer system to reflect a "no-contact" order between Plaintiff and his children. *Id*. at ¶ 60. The court dismissed the case, finding that there was no probable cause to arrest Plaintiff. *Id*. at ¶ 61. However, the court stated that it believed the PCPO was a valid order, and admonished Plaintiff not to contact his children. *Id*. As a consequence, Plaintiff has not seen his children since 2007 and, as of the date of filing the Amended Complaint in this action, had not contacted them since February 2012 for fear of being arrested. *Id*. at ¶ 64.

On February 22, 2013, Plaintiff filed a Petition for Declaratory Judgment regarding the validity of the PCPO in the Eagle County District Court. *Id*. at ¶ 70. On March 27, 2013, the Eagle

County District Court ruled that the PCPO was not valid. *Id*. at ¶ 71.

## II. Procedural Background

Plaintiff initiated this action against various Defendants on February 13, 2013. (Docket #1.) Pursuant to Fed. R. Civ. P. 15(a)(1), Plaintiff amended his complaint as matter of course on May 5, 2013. (Docket #9.) The Amended Complaint initially brought claims against (1) the Board of County Commissioners of the County of Eagle, Colorado, (2) Eagle County Sheriff Joseph Hoy, (3) Eagle County Deputy Sheriff Tad Degen, (4) Eagle School District's Board of Education, (5) Eric Mandeville, (6) Kimberly James, and (7) Heath Mosness. In response to the Amended Complaint, Defendants filed motions to dismiss. On August 12, 2013, this Court entered an order staying discovery until the Court could resolve immunity defenses raised in the motions to dismiss. (Docket #55.) Between February 12, 2014 and February 25, 2014, the Honorable Robert E. Blackburn granted all of the motions to dismiss, leaving Heath Mosness as the only remaining Defendant. (Docket ## 86-88.) On February 27, 2014, the Court lifted the stay of proceedings and on April 3, 2014 the Court entered a November 3, 2014 discovery deadline. (Docket #89.)

Plaintiff's present Motion for Leave to File a Second Amended Complaint seeks to reassert claims against former Defendant Jackie Cooper. (*See* docket #106.) Plaintiff seeks to incorporate factual allegations he discovered when conducting Ms. Cooper's deposition on October 23, 2014. Although the Proposed Second Amended Complaint does not substantially modify the claims or allegations against Defendant Mosness, he opposes the motion on grounds of undue delay. (See docket #108.) Jackie Cooper has joined Defendant Mosness's response brief and has separately filed a brief opposing the Motion for Leave to File a Second Amended Complaint. (Docket ## 107, 110.) Plaintiff filed a reply to both Defendant Mosness's response and to Jackie Cooper's opposition brief. (Docket ##112, 113.)

Plaintiff filed a Motion to Amend the Scheduling Order on the same day he filed the Motion for Leave to Amend. (Docket #104.) Plaintiff's Motion to Amend the Scheduling Order seeks to extend the discovery deadline by ninety days. Defendant opposes the Motion to Amend the Scheduling Order. (Docket #109.)

**III. Discussion**

A motion for leave to amend a complaint, when not permitted as a "matter of course," Fed. R. Civ. P. 15(a)(1), may be granted only upon "the opposing party's written consent or the court's leave," *id.* 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Still, a court properly may refuse leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Bililngs*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Jackie Cooper contends that the Motion for Leave to Amend should be denied as futile; Defendant Mosness contends that the Motion should be denied for undue delay. The Court will address each of these arguments before turning to the Motion to Amend the Scheduling Order.

A. Futility

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). "The futility question is functionally equivalent to the question of whether a complaint may be dismissed for failure to state a claim," pursuant to Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to

dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191 .

Plaintiff seeks to reassert three claims against Ms. Cooper for (1) civil rights violation under 42 U.S.C. § 1983; (2) malicious prosecution under 42 U.S.C. § 1983; and (3) outrageous conduct. Ms. Cooper first asserts that the proposed claims are futile because she is entitled to absolute judicial immunity for acts she performed as the Clerk of the Court for the Eagle Combined Courts. Alternatively, Ms. Cooper contends she is entitled to qualified immunity for the Section 1983 claims, and that all of the claims are subject to dismissal pursuant to Rule 12(b)(6).

**i. Absolute Quasi-Judicial Immunity Defense**

It is well-settled that the doctrine of judicial immunity applies to actions brought pursuant to Section 1983. *Van Sickle v. Holloway*, 791 F.2d 1431, 1434-35 (10th Cir. 1986) (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). Under the doctrine of absolute judicial immunity, "[j]udges are absolutely immune from civil liability for judicial acts, unless committed in the clear absence of all jurisdiction." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). "Moreover, '[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)). This judicial immunity may extend to persons other than judges where performance of judicial acts or activity as an official aid of the judge is involved. *See id.* "Thus, absolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" *Id.* (quoting *Eades v. Sterlinske*, 810 F.2d 723, 726 (7th Cir. 1987)).

Courts have specifically extended absolute immunity to court clerks under a variety of circumstances. *See Rodriguez v Wepris*, 116 F.3d 62, 66-67 (2d Cir. 1997) (affirming grant of immunity for harms allegedly wrought by clerk's delay in scheduling appeal); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir.1980) (same for charge that clerk conspired with others to have plaintiff committed to mental institution). The Tenth Circuit has recognized the availability of absolute immunity to court clerks who perform "quasi-judicial" duties. *See Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981); *McKinney v. Oklahoma Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991) (recognizing judicial immunity for court clerk for alleged civil rights violations arising out of felony and juvenile proceedings); *Newton v. Buckley*, 127 F.3d 1109, 1997 WL 642085, at *4 (10th Cir. 1997) (holding court clerk did not act in absence of all jurisdiction and was therefore absolutely immune from suit even if she did not follow proper procedures in issuing a bench warrant

and using the judge's stamped signature); *Bell v. Manspeaker*, 34 F. App'x 637, 641, 2002 WL 532415, at *3 (10th Cir. 2002) (holding court clerk absolutely immune from suit for allegations arising from clerk's role in coordinating security in Timothy McVeigh trial).

This Court previously determined that the Amended Complaint did not provide allegations about Ms. Cooper's duties as a Court Clerk and the Court was unable to make a determination as to whether Ms. Cooper acted in clear absence of all jurisdiction. (Docket #76, p. 8.) Judge Blackburn adopted the recommendation to grant Ms. Cooper's Motion to Dismiss on grounds that the allegations failed to state plausible claims for relief. (Docket #88.) Ms. Cooper has since been deposed, and Plaintiff quotes her deposition testimony in the Proposed Second Amended Complaint; thus, the Court may consider Ms. Cooper's deposition testimony in addressing her immunity defense. *See Brown v. Montoya*, 662 F.3d 1152, 1166 (10th Cir. 2011) ("[N]otwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may considered documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.") (citation omitted).

At the deposition, Ms. Cooper testified that Defendant Mosness asked her in February 2012 if a restraining order was in effect for Plaintiff. Ms. Cooper typed Plaintiff's name into the Judicial "Eclipse" computer system's search engine and found a notation by Plaintiff's name indicating he was "restrained." (Docket #107-1, at pp. 29:15-30:7.) Defendant Mosness sought clarification about the restraining order because the printout he had from the CCIC database showed only that a restraining order existed, and did not provide the contents of the order. (*Id.* at pp. 14:11- 15:10.) Ms. Cooper relayed to Defendant Mosness the information set forth in the data entry on the Judicial Eclipse computer system, which stated that the order restrained Plaintiff from contacting Ms. James and the two children. Ms. Cooper explained that the data was entered from a court order by one of

seventeen clerks working at the courthouse. (*Id*. at pp. 17:5-18:11.)

Ms. Cooper further testified that the data entries for restraining orders on the Judicial Eclipse system are not always transferred in their entirety to CCIC. (*Id*. at pp. 16:17-23.) According to Ms. Cooper, Defendant Mosness was unable to obtain the complete data entry of the restraining order through CCIC because it was not properly transferred from the Judicial Eclipse system. (*Id*. at pp. 14:11-15:10.) To remedy the transfer problem, Ms. Cooper cancelled the data entry for the restraining order and reissued it, prompting the complete data entry to transfer to CCIC. (*Id*. at pp. 22:1-4; 27:6-12.) Ms. Cooper testified that she printed the cancelled data entry, placed it on her desk, and typed the same data entry back into the Judicial Eclipse system. (*Id*. at pp. 23:15-24:17.) Ms. Cooper understood that when a clerk enters data on the Judicial Eclipse system, it is automatically transferred to CCIC. (*Id*. at p. 25:7-12.) If the data entry is inconsistent with the hard copy version of the restraining order, CCIC rejects the data entry; likewise, if the data entry is consistent with the hard copy version of the restraining order, CCIC accepts it. (*Id*. at pp. 24:18-25:15.) Ms. Cooper explained that it is the duty of the court clerks to update the data entries for restraining orders when, for example, a party's address changes, or the standard judicial form is updated. (*Id*. at pp. 40:24-41:7; 43:7-44:10.)

At the deposition, Ms. Cooper was shown the original restraining order and compared it to her data entry in February 2012; she acknowledged that the original restraining order did not include the children as protected parties. (*Id*. at p. 21:13-25.) Plaintiff alleges that Ms. Cooper was responsible for the data entry that falsely indicated the children were protected parties under the restraining order. The Court finds that Ms. Cooper was performing a quasi-judicial act when she updated the data entry of a protective order on the court's computer system in order to facilitate a complete transfer of the information to CCIC. "Absolute judicial immunity generally extends to

non-judicial officers performing discretionary judicial acts." *Whitesel*, 222 F.3d at 869. Those acts include ministerial acts undertaken at the direction of a judge. *Id*. Although there are no allegations that a judge personally directed Ms. Cooper to retype the data entry, Ms. Cooper's testimony indicates that judges delegate to court clerks the duty of entering the information in restraining orders into the Judicial Eclipse computer system.

Having found that Plaintiff was performing a quasi-judicial function when she engaged in the alleged unlawful act, the Court next addresses Plaintiff's allegation that Ms. Cooper "abused her discretion by exercising judicial and quasi-judicial functions that were beyond the powers allowed her by law." (Docket #106, ¶ 67.) Absolute judicial immunity does not apply when a judge or a judge's aid acts in "clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57; *Whitesal*, 222 F.3d at 868. Ms. Cooper acknowledged at the deposition that the restraining order did not list the children, even though her data entry included a no-contact provision for the children. "However, even if the [non-judicial] officers exceeded their authority or committed grave procedural errors in issuing the discretionary orders, such actions do not equate to acting in clear absence of all jurisdiction." *Whitesel*, 222 F.3d at 869. The Court finds that Ms. Cooper retyped the original data entry in order to prompt a complete transfer of the information to CCIC because the original data entry transfer was incomplete; she had no reason to question whether the previous data entry was consistent with the protective order. Indeed, Ms. Cooper testified that she still does not know whether the original data entry contained a mistake. (Docket #107-1, p.40:5-14.) However, Plaintiff alleges that Ms. Cooper changed the original data entry by adding the two children as protected parties. Despite this allegation, Plaintiff has copied into the Proposed Second Amended Complaint a portion of Ms. Cooper's deposition in which she testified that she simply retyped the information in order to trigger a transfer to CCIC. Plaintiff has not attached any documents contradicting Ms.

Cooper's testimony and provides no factual allegations undermining Ms. Cooper's position, cited in the Proposed Second Amended Complaint, that she retyped the original data entry verbatim. The Court therefore finds that Plaintiff has not plausibly alleged that Ms. Cooper acted in "clear absence of all jurisdiction."

Based on the deposition testimony and the additional allegations in the Proposed Second Amended Complaint, the Court finds that Ms. Cooper was performing "quasi-judicial duties" in updating the computer system's data entries, and did not act in "clear absence of all jurisdiction" in doing so. Accordingly, the Court recommends that the District Court deny Plaintiff's Motion for Leave to Amend, insofar as it seeks to assert claims against Ms. Cooper, as futile because Ms. Cooper is entitled to absolute immunity for her actions.

**ii. Qualified Immunity and 12(b)(6) Defenses**

Recognizing that the District Court may disagree and find Ms. Cooper is not entitled to absolute immunity, this Court will proceed to address Ms. Cooper's argument that the proposed claims against her are futile because she is entitled to qualified immunity and/or the claims are subject to dismissal for failure to state plausible claims for relief pursuant to Rule 12(b)(6).

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is an immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or

statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson*, 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Because the inquiry as to whether Plaintiff has plead facts showing the violation of a constitutional right requires the same analysis as a failure to state a claim defense, the Court will consider Ms. Cooper's 12(b)(6) defenses together with the constitutional claim.

*a. General Civil Rights Violation*

Plaintiff's first claim for relief alleges "Violation of Civil Rights Pursuant to Title 42 U.S.C. § 1983 (General Allegations)[.]" (Docket #106, p. 26.) Plaintiff states that the violations include deprivation of the right to be free from unreasonable seizures and the right not to be deprived of liberty without due process of law. (*Id.* at ¶ 80.) To the extent these allegations are meant to state claims for relief separate from those delineated in the remainder of the operative pleading, such legal conclusions are insufficient to establish that Ms. Cooper violated Plaintiff's constitutional rights pursuant to the first prong of the qualified immunity analysis. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (explaining that "mere, 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice" to overcome a motion to dismiss) (quoting *Twombly*, 550 U.S. at 555). For the same reason, the general allegations fail

to state a claim upon which relief could be granted under Rule 12(b)(6). Thus, despite additional factual allegations about Ms. Cooper in the Proposed Second Amended Complaint, the Court reaches the same finding about this claim as it did in its earlier recommendation to grant Ms. Cooper's Motion to Dismiss. Consequently the Court recommends denying leave to file the first proposed claim against Ms. Cooper because she is entitled to qualified immunity and the claim fails under Rule 12(b)(6).

*b. Malicious Prosecution*

Plaintiff's third[2] claim for relief alleges malicious prosecution under Section 1983. "A section 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008); *see also Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996) ("[O]ur circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of a Section 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a constitutional violation.").

In addressing Ms. Cooper's Motion to Dismiss the Amended Complaint, this Court found that a reasonable juror could infer from Ms. Cooper's alleged conduct that she acted with malice. (*See* docket #76, pp. 13-14.) In making that determination, this Court did not have the benefit of Ms. Cooper's deposition testimony. That testimony, including those portions copied into the Proposed Second Amended Complaint, shows that Ms. Cooper believes she copied the previous data entry

---

[2] Plaintiff's proposed second and fourth claims for relief are directed against Defendant Mosness only.

word for word, and did not intentionally make any changes. Based on her testimony, taken as true, any mistake in the data entry was either unintentional or attributable to the clerk who entered the original data entry. Plaintiff does not allege that Ms. Cooper was lying about these points. Indeed, the Proposed Second Amended Complaint includes the following portion of the deposition transcript:

> Ms. Cooper: I cancelled the [original data entry for the restraining order[3]] and then I just completely recopied [the data entry] over again in our computer system Eclipse, which triggers it to go back to CCIC again.
>
> Q: Okay. So if we had [information showing modifications to the data entry] it would reflect . . . that you retyped the information into the computer in February 2012, right?
>
> [. . .]
>
> Ms: Cooper: It would – the only thing it's going to reflect that I did was retype the entire [original data entry].

(Docket #106, ¶73.) Plaintiff relies on Ms. Cooper's credibility to support his theory that "she was responsible for the creation of the new PCPO." (*Id*.) The prosecutor who charged Plaintiff relied on a computer printout of Ms. Cooper's data entry, which Plaintiff refers to as "the new PCPO." The new PCPO listed the children as protected parties, even though the Final Dissolution Decree was only between Ms. James and Plaintiff. Defense counsel in the criminal case allegedly called Ms. Cooper to obtain a copy of the hard copy version of the Final Dissolution Decree, and she reported that the file was "being stored in Kansas." (*Id*. at ¶77(b)). Ultimately, Plaintiff obtained a declaratory judgment that the PCPO was not "a lawful Order of the Court." (*Id*. at ¶77(g)).

---

[3] Throughout the deposition, Ms. Cooper refers to the 2005 data entry for the restraining order as "the restraining order." Counsel clarifies Ms. Cooper's meaning on this point at least twice. (*See, e.g.*, docket #107-1, pp.24:5-11; 39:6-19.) Reading the deposition as a whole, the Court finds that Ms. Cooper is usually referring to the data entry when she says "restraining order" and the Court inserts that language here to avoid confusion.

While the Amended Complaint (the current operative complaint) leaves open the possibility of an inference that Ms. Cooper intentionally changed the restraining order, her deposition testimony, taken as true, forecloses such an inference. Although the PCPO was invalid and the prosecutor wrongly relied upon it, Plaintiff has not plausibly alleged that Ms. Cooper acted with malice when she retyped the data entry for the Final Dissolution Decree. Thus, the Court finds that Plaintiff has not stated the fourth element of a malicious prosecution claim against Ms. Cooper; Ms. Cooper is entitled to qualified immunity because Plaintiff has not shown that she violated his constitutional rights.

Accordingly, the Court recommends that Plaintiff's Motion for Leave to File the Second Amended Complaint be denied insofar as it states a malicious prosecution claim against Ms. Cooper as such a claim would be subject to dismissal.

*c. Outrageous Conduct*

The elements of liability for the tort of outrageous conduct are that: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the plaintiff incurred severe emotional distress which was caused by the defendant's conduct. *Culpepper v. Pearl Street Bldg., Inc.*, 877 P. 2d 877, 882 (Colo. 1994). "A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result." *Id*. Plaintiff has not alleged that Ms. Cooper intended to cause him severe emotional distress when she performed her duties as Court Clerk regarding the data entry, or that she knew the data entry was incorrect and would facilitate Plaintiff's arrest and prosecution. This Court and the District Court previously reached the same conclusion with regard to the operative Amended Complaint, and there are no new

allegations to substantiate the requisite intent element of an outrageous conduct claim. (*See* docket ## 76, 88.) If anything, the new allegations, taken as true, make an inference that Ms. Cooper intended to cause Plaintiff severe emotional distress appear even more implausible.

Accordingly, this Court recommends denying Plaintiff's Motion for Leave to Amend insofar as it seeks to add a claim against Ms. Cooper for outrageous conduct because such a claim is subject to dismissal under Rule 12(b)(6).

The Proposed Second Amended Complaint seeks to add new allegations against Ms. Cooper while removing allegations about former defendants who are no longer parties to this action; it does not change the claims or factual allegations against Defendant Mosness, who opposes the Motion on the basis of undue delay. Because this Court finds that the claims against Ms. Cooper in the Proposed Second Amended Complaint are subject to dismissal, and those claims are the only substantive changes to the Amended Complaint, the Court recommends denying as futile the Motion for Leave to Amend.

B. Undue Delay

Mindful that the District Court may disagree and find the proposed amendments are not futile, the Court addresses Defendant's argument that the Motion for Leave to Amend should be denied for undue delay.

In the Tenth Circuit, untimeliness alone may be a sufficient basis for denying a party leave to amend. *See Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1315 (10th Cir. 2005); *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether Plaintiff has delayed, but whether such delay is undue. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006). Delay is undue "when the party filing the motion has no adequate explanation for the delay," *Frank*, 3 F.3d at 1365-66, or when "the party seeking amendment knows

or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Las Vegas Ice & Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)).

The deadline for amending the pleadings was May 16, 2014. Plaintiff explains that the Motion for Leave to Amend seeks to incorporate Ms. Cooper's deposition testimony, and that deposition did not occur until October 23, 2014; the Motion for Leave to Amend was promptly filed shortly after the deposition, on November 3, 2014. However, Plaintiff offers no explanation for waiting until the final days of discovery to depose a witness who is central to the factual allegations and whose testimony was likely to direct the course of discovery. The District Court ruled on Ms. Cooper's Motion to Dismiss on February 25, 2014. That Order explained that the factual allegations about Ms. Cooper's conduct were insufficient to state claims for relief because the necessary inferences required to support plaintiff's theory of liability were "too attenuated." (Docket #88, p. 6.) Knowing that more information about Ms. Cooper's conduct was necessary to state a claim for relief, Plaintiff waited until eleven days before the close of the seven-month discovery period to depose Ms. Cooper. Ultimately, this Court found that Ms. Cooper's testimony did not support Plaintiff's theory of liability, but assuming it had provided a basis for renewing the claims against her, the Court does not find an adequate explanation – or any explanation – for the delay in deposing Ms. Cooper.

Accordingly, should the District Court disagree and find that the Second Proposed Amended Complaint is not futile as to the amended claims, this Court recommends dismissing the Motion for Leave to Amend on the basis of undue delay.

C. Motion to Amend Scheduling Order

Plaintiff seeks to extend the discovery cutoff date from November 3, 2014 to February 3, 2015. Fed. R. Civ. P. 6(b)(1) requires "good cause" for extending a deadline. Here, Plaintiff asserts "good cause" on the basis that he learned of discoverable information for the first time at Ms. Cooper's October 23, 2014 deposition, less than two weeks before the close of discovery. Plaintiff states that Ms. Cooper described information and court records that may be critical to the case. Plaintiff's reply to the Motion cites portions of Ms. Cooper's testimony in which she explains that an individual can obtain information as to when and what was modified on a data entry in the Judicial Eclipse computer system. Presumably, Plaintiff seeks an additional three months of discovery to obtain information about modifications to the data entry at issue. Plaintiff does not explain why three months are necessary to obtain this information. Indeed, Plaintiff immediately requested the document after the deposition. Ms. Cooper's counsel apparently declined to provide that information. At that time, or at any point within the remaining eleven days of discovery, Plaintiff could have requested the information from Defendant or filed a motion to compel. In any event, Ms. Cooper testified that she believed an individual can obtain the information by making "a public request from the court." (Docet #114, p. 7.) If Ms. Cooper is correct, Plaintiff can obtain the information without engaging in formal discovery. If not, the Plaintiff may seek relief from the Court concerning that discreet request.

The Court recognizes that, if the District Court grants the Motion for Leave to File an Amended Complaint, Ms. Cooper may be in a position to demonstrate good cause to extend the discovery deadline. However, the Court does not find good cause to grant an extension of the discovery cutoff at this time, and must deny the Motion to Amend Scheduling Order.

## III. Conclusion

The Court finds that the Proposed Second Amended Complaint is futile because the only

substantive changes are against Ms. Cooper, who is entitled to absolute immunity, or alternatively, qualified immunity, and the claims against her are also subject to dismissal pursuant to Rule 12(b)(6); additionally, the Court finds that Plaintiff has not provided an adequate explanation for the untimely request to extend the discovery cutoff by three months.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully RECOMMENDS that Plaintiff's Motion for Leave to File Second Amended Complaint [filed November 3, 2014; docket #103] be **DENIED**. Additionally, the Court **DENIES** Plaintiff's Motion to Amend Scheduling Order [filed November 3, 2014; docket #104].

Dated and entered this 14th day of January, 2015, in Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge