**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-00393-REB-MEH

STAN CHAMBERS,

    Plaintiff,

v.

HEATH MOSNESS, EAGLE COUNTY DEPUTY SHERIFF, in his individual and official capacity,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**Blackburn, J.**

The matter before is **Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** [#111],[1] filed December 1, 2014.  I grant the motion.[2]

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute to any material

---

[1] "[#111]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

[2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the papers. *Cf.* **FED. R. CIV. P. 56(a)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that any hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

fact and the movant is entitled to judgment as a matter of law. **FED. R. CIV. P.** 56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Id.*** at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

### III. ANALYSIS

At the heart of this case is the interpretation of a protection order entered in connection with plaintiff's divorce[3] from Kimberly James. The protection order restrained plaintiff from contacting or coming within 50 yards of Ms. James. Although

---

[3] I use the term "divorce" colloquially to refer to the legal construct known as "dissolution of marriage" under Colorado law. **See** § 14-10-103(2), C.R.S.

the no contact provision of the order applied only to "Plaintiff[s]," and Ms. James was the only named plaintiff, the order also awarded sole custody[4] of the couple's two children to Ms. James and provided plaintiff with "[n]o visitation unless ordered by [the] District Court."  (**Def. Motion App**., Exh. E ¶ 4 at 2 [#111-5], filed December 1, 2014.) The protection order, which expressly expired on April 7, 2005, subsequently was incorporated into the parties' decree of dissolution of marriage, which was entered that same day:

> **Petitioner [Ms. James] is appointed residential custodian of the children and has total parenting time and full parental responsibility.  Petitioner has the right to leave the state and the country with the children.  Respondent [plaintiff] has no parenting time until application for parenting time is filed and heard by the Court.  The Permanent Civil Protection Order from 05C38 (attached) is incorporated herein and remains in effect until modified by the Court upon proper application of the Respondent.**

(*Id*, Exh. F at 2 (emphasis in original).)  Plaintiff presents neither argument nor evidence suggesting that he ever made application to alter these terms or otherwise was allowed parenting time with the children.  Nevertheless, while plaintiff was incarcerated from 2007 to 2011,[5] his case manager authorized him to write letters to the children. Likewise, after plaintiff was released, his case manager informed him that he could send gifts and letters to his children.

---

[4] I use the term "sole custody" to describe the practical effects of the allocation of parental responsibilities under §14-10-124, C.R.S.

[5] The reasons for plaintiff's incarceration are neither apparent from the record nor relevant to the issues raised by and inherent to the present motion.

The events that gave rise to this lawsuit occurred on February 14, 2012, when plaintiff sent a dozen roses and a card to his daughter at her school for Valentine's Day. The assistant principal intercepted the flowers and alerted Ms. James,[6] who in turn contacted defendant, Deputy Sheriff Heath Mosness of the Eagle County Police Department. Ms. James told defendant that plaintiff was violating the protective order by attempting to contact his daughter. Reviewing a copy of the protection order in the Colorado Crime Information Center ("CCIC") database,[7] defendant informed Ms. James that it did not appear to him that the children were protected parties. According to defendant, Ms. James responded "that she has spoken with the courts to try to get the language changed and it hasn't happened." (**Def. Motion App.**, Exh. B at 3 of 4 [#111-2], filed December 1, 2014.) Knowing that the CCIC database does not always reflect all information contained in the protection order, defendant told Ms. James that he would call the court to attempt to clarify the scope of the protection order.

---

[6] Previously, when plaintiff mailed gifts, cards, and money to his children at their home address, Ms. James had filed a report with the Eagle County police department, claiming that plaintiff was violating the protection order. The officer who investigated that complaint determined that the children were not protected parties under the order. However, the school was contacted in connection with that investigation and apparently concluded that the protection order did prohibit plaintiff from contacting his children. School officials did not deliver the flowers to plaintiff's daughter.

[7] The CCIC database is the Colorado state counterpart of the FBI's National Crime Information Center ("NCIC") database. As described by the court previously, "[t]he NCIC database is 'an electronic clearinghouse of crime data' consisting of 21 separate files, one of which is Protection Orders:"

> Criminal justice agencies enter records into NCIC that are accessible to law enforcement agencies nationwide. . . However, a positive response from NCIC is not probable cause for an officer to take action. NCIC policy requires the inquiring agency to make contact with the entering agency to verify the information is accurate and up-to-date. . . . The entry, modification, and removal of records are the responsibility of the agency that entered them.

(**Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** at 4-5 [#88], filed February 25, 2014 (internal citations and quotation marks omitted).

4

The following day, defendant visited Jackie Cooper, Clerk of the District Court of Eagle County, Colorado. Ms. Cooper entered plaintiff's name into the court's computer database, Eclipse, which generated an entry showing that the protection order in fact did prohibit plaintiff from contacting his children. Because the information available to defendant from the CCIC database therefore appeared in conflict with the information in the court's Eclipse database, defendant asked Ms. Cooper to rectify the discrepancy. Ms. Cooper accordingly cancelled the original information in the Eclipse database and reentered it, after which the information available on the CCIC database likewise showed the children as protected parties.[8] According to Ms. Cooper, the information shown on her computer screen when she initially entered plaintiff's name was the same as the information she reentered into the system after cancelling the original order. At the same time, defendant also obtained a paper copy of the protection order and the decree of dissolution of marriage which incorporated it.

Based on all this information, defendant prepared a warrant affidavit, which he presented to an assistant district attorney for the Fifth Judicial District for her review and approval. After being thus vetted, the affidavit was presented to a magistrate judge, who found probable cause for the arrest issued an arrest warrant for plaintiff. (**See Def. Motion App.**, Exh. A [#111-1], filed December 1, 2014.) Nevertheless, following a hearing in January 2013, a judge found no probable cause for the arrest and dismissed

---

[8] Ms. Cooper testified that she cancelled and reentered the order of her own volition and that defendant made no request that she do so. Viewing the evidence in the light most favorable to plaintiff, however, I must accept as true defendant's statement in his investigative report that he affirmatively asked Ms. Cooper to update the database. (**See Def. Motion App.**, Exh. B at 3 of 4 [#111-2], filed December 1, 2014.)

the case. This lawsuit followed.[9] Herein, plaintiff alleges causes of action under 42 U.S.C. § 1983 for false arrest and malicious prosecution against defendant in his individual capacity, and an official capacity claim for failure to implement appropriate polices, and under state law for outrageous conduct.[10] Defendant moves for summary judgment, asserting that he is entitled to qualified immunity from all plaintiff's claims. I agree and therefore grant the motion.

A state official is immune from civil liability unless his actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); ***see also Herring v. Keenan***, 218 F.3d 1171, 1175 (10th Cir. 2000), ***cert. denied***, 122 S.Ct. 96 (2001). To overcome this immunity, plaintiff must establish both that defendant violated his rights under federal law and that such rights were clearly established at the time of the violation. ***Greene v. Barrett***, 174 F.3d 1136, 1142 (10th Cir. 1999). A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." ***Pearson v. Callahan***, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). ***See also Herrera v. City of***

---

[9] All other defendants have been dismissed from this lawsuit either on initiative of the plaintiff or by order of the court.

[10] Plaintiff's complaint also included general allegations of deprivation of his rights under the Fourth and Fourteenth Amendments. To the extent these allegations are intended to assert claims separate from plaintiff's specific claims of false arrest and malicious prosecution, they are far too vague and conclusory to show the existence of a clearly established right. ***See Harris v. City and County of Denver***, 2012 WL 263046 at *3 (D. Colo. Jan. 30, 2012) ("Identification of a constitutional right in the abstract is insufficient; instead, a plaintiff must precisely articulate the clearly established right that was allegedly violated and specifically identify the defendant's conduct that violated the right.").

***Albuquerque***, 589 F.3d 1064, 1070 (10th Cir. 2009).

In the Tenth Circuit, a constitutional claim for either false arrest or malicious prosecution originates with the elements of the corresponding state law tort. **See *Erikson v. Pawnee County Board of County Commissioners***, 263 F.3d 1151, 1154 (10th Cir. 2001) (malicious prosecution), ***cert. denied***, 122 S.Ct. 1438 (2002); ***Smith v. Plati***, 258 F.3d 1167, 1174 (10th Cir. 2001) (false arrest), ***cert. denied***, 123 S.Ct. 109 (2002). To bring either variety of claim within the ambit of section 1983, however, plaintiff must demonstrate, in addition to the elements of the state law tort, that his "Fourth Amendment right to be free from unreasonable search and seizure has been violated." ***Trimble v. Park County Board of Commissioners***, 2000 WL 1773239 at *3 (10th Cir. Dec. 4, 2000) (false arrest). **See also *Becker v. Kroll***, 494 F.3d 904, 914 (10th Cir. 2007) (same in context of malicious prosecution claim ).[11]

Thus, the tort of false arrest achieves constitutional dimension when the arrest is not supported by probable cause. **See *Kaufman v. Higgs***, 697 F.3d 1297, 1300 (10th Cir. 2012); ***Keylon v. City of Albuquerque***, 535 F.3d 1210, 1216 (10th Cir. 2008). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an

---

[11] Although plaintiff also purports to bring his false arrest claim under the Fourteenth Amendment, the Tenth Circuit has held that such claims, whether implicating the substantive or procedural aspects of the Fourteenth Amendment, are not cognizable in light of ***Albright v. Oliver*** 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). **See *Becker***, 494 F.3d at 918-19 ("[T]he unavoidable construction of ***Albright*** is that no § 1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment. . . . [W]e find ***Albright***'s reasoning regarding substantive due process equally persuasive with regard to the Fourteenth Amendment's procedural component.").

7

offense." ***Romero v. Fay***, 45 F.3d 1472, 1476 (10th Cir. 1995) (citations and internal quotation marks omitted).  In determining whether an officer has sufficient, reasonably trustworthy information to establish probable cause, the court looks to the "totality of the circumstances."  ***United States v. Morgan***, 936 F.2d 1561, 1569 (10th Cir. 1991), ***cert. denied***, 112 S.Ct. 1190 (1992).  An officer may weigh the credibility of witnesses, but he may not "ignore available and undisputed facts."  ***Baptiste v. J.C. Penney***, 147 F.3d 1252, 1259 (10th Cir. 1998).  Nevertheless, the Fourth Amendment is not offended by mere negligence or innocent mistake in the determination whether probable cause exists.  ***See Bruner v. Baker***, 506 F.3d 1021, 1027 (10th Cir. 2007).  A constitutional violation requires evidence that the officer knowingly or recklessly included false statements in the affidavit or knowingly or recklessly omitted information which would have vitiated a finding of probable cause.  ***Id.*** at 1026.

Under these standards, I cannot find that defendant knowingly or recklessly provided a false or misleading warrant affidavit.  Defendant plainly set forth the discrepancy between what Ms. James reported to him about the scope of the protection order and what the CCIC database revealed.  He provided the pertinent language of the protection order verbatim.  Although the order named only Ms. James as a plaintiff, it also provided that plaintiff was to have no visitation with the children unless and until he had applied to the court to alter that condition.  Defendant then averred that, given these apparent conflicts, he contacted the clerk of the issuing court to clarify whether the children were protected parties under the protection order.[12]

---

[12] Plaintiff's suggestion that the affidavit is infirm for omitting the particulars of defendant's conversation with Ms. Cooper is frankly puzzling.  If anything, those details would have strengthened the affidavit's showing of probable cause, as they further confirm that defendant's interpretation of the scope

8

Given the totality of these relevant circumstances, I find and conclude that defendant had more than adequate probable cause to believe that plaintiff had violated the protection order. Although plaintiff appears to believe that the scope of the protection order is obvious from the face of the document, it is not. Indeed, given that the protection order gave Ms. James full parental rights and precluded even visitation for plaintiff, it was entirely reasonable for plaintiff to conclude that plaintiff was not to have contact with the children and thus seek an arrest warrant.[13]

Other circumstances in this case further support the conclusion that defendant had probable cause to arrest plaintiff. Defendant did not take Ms. James's (potentially biased) word at face value, nor did he rely exclusively on the (potentially incomplete) CCIC database. Instead, he went directly to the issuing court for further clarification. The information contained in the court's Eclipse database affirmed that the order prohibited plaintiff from contacting his children. In addition, defendant presented his warrant affidavit to both an assistant district attorney and a magistrate judge, each of whom independently confirmed that probable cause existed for plaintiff's arrest.[14]

---

of the order was reasonable.

[13] Even if the order might be thought unclear in the this regard, the Constitution neither requires an officer to pursue every possible avenue of inquiry contrary to finding of probable cause nor guarantees an error-free investigation. *See Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Moreover, even if defendant were mistaken in concluding that probable cause existed, such mistakes are insufficient to raise a constitutional claim. *Bruner*, 506 F.3d at 1027. "The Constitution does not guarantee that only the guilty will be arrested." *Baker*, 99 S.Ct. at 2695. *See also Romero*, 45 F.3d at 1480 ("[A] police officer does not commit false imprisonment merely by arresting an individual who happens to be innocent.").

[14] Contrary to plaintiff's argument, the evidence does not suggest either that defendant presented false information in the affidavit or alternatively that he omitted material information that would have vitiated the finding of probable cause. This is not a case in which the warrant was so "lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 27 1(1986). Thus the judge's imprimatur was sufficient to allow defendant reasonably to believe that his affidavit established probable cause.

Even if plaintiff could establish a Fourth Amendment violation based on this evidence, defendant would be entitled to qualified immunity under the second prong of the analysis in any event.  The Fourth Amendment right implicated by a false arrest claim is considered clearly established if "it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." ***Koch v. City of Del City***, 660 F.3d 1228, 1241 (10th Cir. 2011).  This standard is satisfied if there was "arguable probable cause" for the arrest.  ***See Kaufman v. Higgs***,  697 F.3d 1297, 1300 (10th Cir. 2012); ***Robertson v. Las Animas County Sheriff's Department***, 500 F.3d 1185, 1191 (10th Cir. 2007).  Thus, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." ***Hunter v. Bryant***, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (citation and internal quotation marks omitted).

Despite plaintiff's protestations to the contrary, it was entirely reasonable for defendant to conclude that the protection order extended to the children.  Given the conflicting information he received from Ms. James on the one hand and the CCIC database on the other, defendant wisely inquired further.  He obtained a copy of the original protection order, the decree of dissolution of marriage which extended – or revitalized, as the case may be – the no parenting time provisions of the protection order, and further information from the judicial Eclipse database, all of which reasonably supported his conclusion that the protection order covered the children.  He included all this information without misstatement or omission in his warrant affidavit, which he vetted through an assistant district attorney before presenting it to a judge, who independently found probable cause for plaintiff's arrest.  On the relevant evidentiary

10

record, it would have been far from clear to a reasonable officer that probable cause was lacking under the circumstances.

Accordingly, I find and conclude that plaintiff has failed to present evidence sufficient to create a genuine dispute of material fact as to whether defendant had probable cause to arrest plaintiff and whether it would have been clear to a reasonable officer that probable cause was lacking in the same or similar circumstances. In the absence of such proof, plaintiff's constitutional claim of false arrest fails. Accordingly, defendant is entitled to qualified immunity on this claim.

This same analysis is dispositive of plaintiff's malicious prosecution claims under the Fourth and Fourteenth Amendments as well. **See *Pierce v. Gilchrist***, 359 F.3d 1279, 1285-86 (10th Cir. 2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.") (citations and footnote omitted).) To prove such a claim, plaintiff must establish, *inter alia*, that defendant acted with malice. **See *Novitsky v. City of Aurora***, 491 F.3d 1244, 1258 (10th Cir. 2007). Such a finding cannot be based on proof of mere negligence or inadvertent mistake, much less the wholly reasonable conclusion here that probable cause existed for the arrest. **See *id.*** Thus, defendant is entitled to qualified immunity on this claim as well.

Given the absence of an underlying constitutional violation, plaintiff's putative official capacity claim for failure to implement appropriate policies fails as well.[15]

---

[15] Plaintiff's theory of municipal liability is meritless in any event. His arguments are premised entirely on the actions of defendant in relation to this particular case, which evidence would not constitute a policy or custom even if there were a constitutional violation. **See *Moss v. Kopp***, 559 F.3d 1155, 1169 (10th Cir. 2009); ***Butler v. City of Norman***, 992 F.2d 1053, 1055 (10th Cir. 1993).

***Martinez v. Beggs***, 563 F.3d 1082, 1091 (10th Cir.), ***cert. denied***, 130 S.Ct. 259 (2009); ***Fuchs v. Sanders***, 659 F.Supp.2d 1136, 1149 (D. Colo. 2009). ***See also Myers v. Oklahoma County Board of County Commissioners***, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) ("[A section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same.") (citation and internal quotation marks omitted). Thus, even if plaintiff had not agreed previously to dismiss all official capacity claims (*see* **Order Regarding Addendum to Plaintiff's Unopposed Motion To Dismiss** [#74], filed October 9, 2013), defendant would be entitled to summary judgment on this claim in any event.

Finally, I find and conclude that defendant is entitled to summary judgment on plaintiff's outrageous conduct claim. The elements of the state law claim for outrageous conduct require, tautologically, that defendant engaged in extreme and outrageous conduct. ***Culpepper v. Pearl Street Building, Inc.***, 877 P.2d 877, 882 (Colo. 1994).[16] The level of outrageousness required to constitute extreme and outrageous conduct is extraordinarily high, ***Coors Brewing Co. v. Floyd***, 978 P.2d 663, 666 (Colo. 1999), and conduct is not considered outrageous unless it is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community," ***Destefano v. Grabrian***, 763 P.2d 275, 286 (Colo. 1988). Defendant's actions here, which at most show only negligence, plainly do not rise to this level.

---

[16] Nor is there any evidence suggesting that the other two elements of this tort claim – that defendant engaged in such conduct recklessly or with the intent of causing plaintiff severe emotional distress and that defendant's conduct caused plaintiff to suffer severe emotional distress – are satisfied in this case.

## IV.  ORDERS

For these reasons, I find and conclude that defendant is entitled to summary judgment as to all plaintiff's remaining claims in this lawsuit.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** [#111], filed December 1, 2014, is **GRANTED**;

2. That plaintiff's claims against defendant are **DISMISSED WITH PREJUDICE**;

3. That all pending pretrial deadlines, the combined Final Pretrial Conference and Trial Preparation Conference set May 1, 2015, at 10:00 a.m., and the trial set to commence May 18, 2015, are **VACATED**;

4. That judgment with prejudice **SHALL ENTER** on behalf of defendant, Heath Mosness, Eagle County Deputy Sheriff, in his individual and official capacities, against plaintiff, Stan Chambers, on all claims for relief and causes of action asserted in this action;

5. That judgment without prejudice **SHALL ENTER** in accordance with the following orders:

   a. **Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** [#86], filed February 12, 2014;

   b. **Order Re: Objections to Recommendation of United States Magistrate Judge** [#87], filed February 18, 2014;

   c. **Order Overruling Objections to and Adopting Recommendation of United States Magistrate Judge** [#88], filed February 25, 2014;

   d. **Order Regarding Addendum to Plaintiff's Unopposed Motion To**

        **Dismiss** [#74], filed October 9, 2013; and

        e.  **Order Regarding Plaintiff's Unopposed Motion To Dismiss** [#66], filed September 9, 2013;

6.  That defendant is **AWARDED** his costs to be taxed by the clerk of the court in the time and manner prescribed in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

7.  That this case is **CLOSED**.

Dated February 27, 2015, at Denver, Colorado.

        **BY THE COURT:**

        */s/ Robert E. Blackburn*
        Robert E. Blackburn
        United States District Judge